# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JEFF POFF,

                    Plaintiff,

v.

DR. JOHN SCHETTLE, DR. MAN LEE, AMANDA COLE, and JASON JACKSON,

                    Defendants.

Case No. 15-CV-954-JPS

**ORDER**

      Plaintiff Jeff Poff ("Poff"), a prisoner, brings this action pursuant to 42 U.S.C. § 1983 against Defendants, prison officials at Waupun Correctional Institution ("Waupun"), alleging that they acted with deliberate indifference to his medical needs—specifically, that they failed to properly treat a tooth he chipped on a rock in his baked beans. Defendants filed a motion for summary judgment on May 22, 2017. (Docket #59). Poff filed a response on May 26, 2017. (Docket #66 and #67). Defendants replied on June 9, 2017. (Docket #68). For the reasons stated below, Defendants' motion will be granted and this action will be dismissed.

1.    **STANDARD OF REVIEW**

      Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

2. **RELEVANT FACTS**

   2.1 **Poff's Failure to Dispute the Material Facts**

The relevant facts are largely undisputed because Poff did not dispute them. In the Court's amended scheduling order, entered January 23, 2017, Poff was warned about the requirements for opposing a motion for summary judgment. (Docket #51 at 3). Accompanying that order were copies of Federal Rule of Civil Procedure 56 and Civil Local Rule 56, both of which describe in detail the form and contents of a proper summary judgment submission. Most relevant here is Local Rule 56(b)(2), which obligates the non-movant on summary judgment to file "a concise response to the moving party's statement of facts that must contain a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the

record, and other supporting materials relied upon[.]" Civ. L. R. 56(b)(2)(B)(i).

Next, on May 22, 2017, Defendants filed their motion for summary judgment. (Docket #59). In the motion, Defendants also warned Davis about the requirements for his response as set forth in Federal and Local Rules 56. *Id.* at 1–2. He was provided with additional copies of those Rules along with Defendants' motion. *See id.* at 3–12. In connection with their motion, Defendants filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #61). It contained short, numbered paragraphs concisely stating those facts which Defendants proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

In response, Poff submitted two documents, neither of which respond to Defendants' statement of facts in compliance with the Federal and Local rules. The first is his brief in opposition to Defendants' motion. (Docket #66). His brief contains a prose recitation of his version of the relevant events, but it neglects to specifically address the numbered paragraphs set forth in Defendants' statement of facts. *See id.* at 1–5. Moreover, Poff's factual narrative does not contain citations to any record evidence. *Id.* Instead, he simply attached over fifty pages of exhibits to the brief, including requests for medical care, medical records, and inmate grievances, without explanation. *See* (Docket #66-1). Similarly, Poff's other submission, his own "proposed findings of fact," provides no citations to

actual evidence, nor does it address Defendant's statement of facts in any fashion. (Docket #67). [1]

Despite being twice warned of the strictures of summary judgment procedure, Poff ignored those rules by failing to properly dispute Defendants' proffered facts with citations to relevant, admissible evidence. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. *See Waldridge*, 24 F.3d at 922; *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing."). Further, while the Court is cognizant that Poff lacks legal training, his utter failure to comply with the rules of procedure is not excusable on that ground alone. Thus, the Court will, unless otherwise stated, deem Defendants' facts undisputed for purposes of deciding their motion for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

### 2.2 Facts Material to Defendants' Motion

Poff was an inmate at Waupun. Defendants were at the relevant time all employees of the Wisconsin Department of Corrections ("DOC"): Dr. John Schettle ("Schettle") was a dentist at Waupun; Dr. Man Lee ("Lee") is the DOC's dental director; Amanda Cole ("Cole") is a dental hygienist at

---

[1] Poff filed another batch of exhibits, again without explication, after the close of the briefing period for Defendants' motion. *See* (Docket #66-2). The Court reviewed these documents and finds them wanting for the same reasons as his timely submissions.

Waupun; and Jason Jackson ("Jackson") is a dental assistant at Waupun. As noted above, this case stems from allegedly inadequate medical care Poff received after he chipped his tooth on a rock buried in his food.

### 2.2.1 Dental Services for Waupun Inmates

When inmates enter DOC institutions, they are given an inmate handbook informing them that if they require non-emergency dental attention, they must submit a dental services request to the health/dental services unit. Inmates are informed that if they need to see dental staff immediately for an emergency, they need to alert unit staff of their concern. Waupun's dental services unit receives between 10–25 dental services requests from inmates on a typical day.

Pursuant to DOC policy, these requests are divided into four categories—emergency, urgent, routine, and hygiene. Under those policies, only the institution dentist is qualified to triage dental services requests. The policy defines a dental "emergency" as a dental problem causing a life-threatening condition and requiring immediate care. Examples include: uncontrolled bleeding, allergic reactions/shock, swelling or fractures causing impaired breathing, high fever from dental infection, or serious trauma.

An "urgent" request involves a dental condition which, if not addressed in a timely manner, could result in severe pain and suffering. In addition to pain, other factors are considered when scheduling urgent appointments, such as whether the inmate has an exposed nerve, facial swelling, or an inability to eat or sleep. Generally, urgent dental issues are brought to the dental services unit's attention by security or health services staff, not through a dental services request.

Non-emergency "routine" dental services are elective and provided when requested by the inmate or when determined to be clinically appropriate by the treating dentist. Routine requests are further subdivided into three categories: routine, essential routine, and prosthetic routine. Routine requests include dental conditions that are asymptomatic and for which a delay in completion of up to one year would not result in serious health risks. This includes minor cavities, old but serviceable fillings, prosthetics which are cosmetic only, or denture repairs when the denture remains functional. Essential routine requests include dental conditions which are chronic, asymptomatic, and which if not completed within 6–8 weeks could result in an acute episode. This encompasses advanced cavities, teeth with hopeless prognosis, infected teeth, and care for inmate patients which is relevant to their chronic medical conditions.

Schettle makes every effort to see inmates who are scheduled on the essential routine wait list within five days. As the dentist at Waupun, Schettle triaged the inmates' dental services requests and identified the proper category of the request, *i.e.*, routine, essential routine, hygiene, etc. Schettle then forwarded the requests to Jackson, the dental assistant, for placement on the identified wait list.

### 2.2.2 Poff's Chipped Tooth and Treatment

On Tuesday, January 21, 2014, Poff bit into a rock that was in his baked beans. He sent a request to the dental services unit stating that he cracked his tooth on a rock in his food, that he was in "major" pain, and that he also needed his teeth cleaned. The next day, Schettle reviewed the request and determined that an urgent appointment was not required. Though Poff complained of pain, there was no mention of an exposed nerve, facial swelling, or an inability to eat or sleep which would have

indicated a need for immediate care. Schettle responded to Poff that he would be placed on the essential routine wait list and the hygiene/teeth cleaning wait list. Jackson placed Poff on both wait lists.

On Saturday, January 25, 2014, Poff submitted another request to the dental services unit, reiterating his claims of intense pain, which Schettle received on Monday, January 27. Schettle saw Poff that same day. At the appointment, Poff said his pain was located in the upper right part of his mouth, which Schettle identified as tooth #2. Jackson took a periapical x-ray of Poff's tooth #2 to identify potential issues below the gum line. The x-ray also showed portions of the adjacent teeth but did not image the entire mouth.

Schettle found a small distal buccal cusp chip in tooth #2 and an unrelated canker sore on the roof of Poff's mouth on the left. The chip in Poff's tooth appeared to be caused by trauma. Schettle filled Poff's tooth #2 with an occlusal composite filling and applied Debacterol on the canker sore to provide pain relief and assist with the natural healing process.

Poff's injury related to the rock-biting incident was fully resolved with the filling Poff received at his January 27th appointment. On January 29, however, Poff submitted a request to dental services stating that he believed Schettle might have missed another cracked tooth in his mouth due to the rock. Schettle triaged the request and determined Poff should be placed on the routine wait list because he did not complain of any pain.

On February 11, 2014, Poff sent another request to dental services saying that it had been two weeks since he was last seen, reiterating his belief that Schettle might have missed a second cracked tooth, and stating that he was in a lot of pain. Based on Poff's complaint of pain, Schettle placed him on the essential routine wait list. On February 14, Schettle saw

Poff regarding his complaints. Poff raised three issues: a canker sore on his lower right-side outer gum; a perception of chipped teeth or missing fillings on both the right and left side of his lower jaw; and a chipped tooth on the cheek side of his right upper jaw.

Upon examination, Schettle determined that Poff had no chipped teeth or failed restorations on the lower jaw. Schettle identified small chips on the grinding surface of Poff's teeth #2 and #3 on the cheek side of the right upper jaw. According to Schettle, this type of wear is generally caused by age, chewing and tooth grinding, and normal wear and tear. The small chips were so shallow that Poff did not need fillings, so Schettle treated the chips by smoothing them with a smoothing/polishing fine diamond or synthetic stone dental bur. He also applied Debacterol to the canker sore.

On February 27, Poff sent yet another request to dental services, this time demanding an x-ray to show that he had damage to two other teeth from the rock incident and claiming Schettle was denying him proper medical treatment. Schettle responded that Poff was seen and treated on January 27 for the rock incident. Schettle also had Jackson schedule Poff for a teeth cleaning and examination.

On April 4, 2014, Cole saw Poff for his teeth cleaning appointment. Poff reported to Cole that he did not brush his teeth at that time. Cole encouraged him to begin brushing again. She identified a canker sore on the inside of the left lower jaw. She then took four bitewing x-rays to show all Poff's teeth in a panorama. Cole noted on the x-ray report Poff's overall poor oral hygiene, including gingivitis, periodontitis, high levels of plaque accumulation, moderate calcium buildup, high levels of staining and discoloration, and high levels of bleeding during his dental prophylaxis.

Schettle, reviewing the x-rays, found that they showed marginal breakdown of the amalgam filling of tooth #12 (in the upper left quadrant) which would need a new restoration. Under DOC policy, this sort of problem would be relegated to the routine services wait list. The marginal breakdown of the restoration to Poff's tooth #12 was most likely age-related or related to underlying decay. He also observed a canker sore on Poff's gums on the lower left side of his jaw, to which he applied Debacterol.

On August 6, 2014, Poff saw Dr. Lee at his cell in the restrictive housing unit. Poff complained of pain due to a possibly cracked tooth on the lower left side of his jaw. Lee scheduled Poff to be seen in the dental clinic. On September 15, Lee saw Poff in the dental clinic. Poff reported that he had pain in the lower left and upper right portions of his mouth as a result of biting a rock. Lee noted that the upper right-side filling had been completed and that the x-rays taken in April showed the teeth on Poff's lower left side (#17, #18, and #19) were within normal limits.

Lee noted that tooth #17 was supra-erupted due to lack of an upper opposing tooth. This meant that Poff's tooth #17 continued to migrate outward because there was no opposing tooth to push against. The supraeruption, combined with poor oral hygiene, created a deep pocket food trap which irritated the area of teeth #17–#19. Lee recommended a cleaning of Poff's teeth #17–#19 and a fluoride varnish to desensitize the area. Lee saw nothing that made him believe Poff's symptoms in August and September 2014 were related to the rock incident in January or purportedly deficient care following the rock incident.

Cole saw Poff again on October 17, 2014, when she deep-cleaned teeth #17, #18, and #19 per Lee's direction and provided a fluoride varnish to desensitize the area. Poff and Cole again discussed his periodontal

disease due to years of poor oral hygiene and the importance of brushing and flossing. Shortly thereafter, Poff was transferred to Green Bay Correctional Institution. He is currently housed at Columbia Correctional Institution.

### 3. ANALYSIS

In this suit, Poff claims that Defendants were deliberately indifferent to his dental condition, in violation of the Eighth Amendment. To state a claim under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need, the plaintiff must show: (1) an objectively serious medical condition; (2) that the defendants knew of the condition and were deliberately indifferent in treating it; and (3) this indifference caused the plaintiff some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Even if an official is aware of the risk to the inmate's health, "he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

### 3.1 Poff Did Not Have a Serious Medical Need

Poff's claim fails out of the gate because his chipped tooth did not qualify as an objectively serious medical condition. An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d

1364, 1373 (7th Cir. 1997). It need not be "life-threatening," *id.*, but to rise to the level of constitutional seriousness, the condition should constitute "a denial of the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834. Thus, a medical need may be deemed serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering when treatment is withheld, *Gutierrez*, 111 F.3d at 1367–73, "significantly affects an individual's daily activities," *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998), causes pain, *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer*, 511 U.S. at 834.

Here, Poff suffered a small chip in one tooth from biting down on a rock. He did not have uncontrolled bleeding, allergic reactions or shock, swelling or fractures, fever from infection, or other serious trauma that would indicate an emergency dental need. Nor did he have an exposed nerve, facial swelling, or an inability to eat or sleep that would indicate pain serious to warrant exigent treatment. Put simply, a minor chipped tooth is not commonly life-threatening, debilitating, or uncontrollably painful.

It is true that "'[d]ental care is one of the most important medical needs of inmates.'" *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). Yet Poff's chipped tooth does not compare to cases where the Seventh Circuit has found that an inmate presented a serious dental need. Such cases typically involve either debilitating pain or a combination of pain and the ongoing risk of more serious harms like infection or tooth decay. *See McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (a "botched" tooth extraction caused a sinus perforation, painful swelling so large the inmate could not close his mouth, infection, and a foul-tasting discharge that kept him from eating);

*Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940–41 (7th Cir. 2015) (tooth abscess is a serious medical need because "[a] tooth abscess is not a simple toothache. It is a bacterial infection of the root of the tooth, and it can spread to the adjacent gum and beyond—way beyond. It is often painful and can be dangerous."); *Smego v. Mitchell*, 723 F.3d 752, 756–57 (7th Cir. 2013) (thirty months of serious dental pain from twelve untreated cavities was a serious medical need); *Hoeft v. Menos*, 347 F. App'x 225, 227 (7th Cir. 2009) (six months of extensive pain from untreated cavities and tooth loss that prevented the inmate from properly chewing his food qualified as a serious medical condition). Poff's chipped tooth, by contrast, was not infected, he did not complain of trouble eating or sleeping, and he had no swelling or uncontrolled bleeding. Although he now claims that the chipped tooth prevented him from sleeping and eating, (Docket #66 at 7), he never mentioned this in his numerous requests for dental care, and he offers no sworn statement to substantiate the assertion, *see McGinn v. Burlington N. R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (the party resisting summary judgment "cannot rest on his pleadings, but must produce his own evidence").

Poff's condition is much more like *Greene v. Pollard*, 335 F. App'x 612, 614 (7th Cir. 2009), where the Seventh Circuit affirmed dismissal of an inmate's complaint regarding a chipped tooth. The only symptoms the prisoner alleged were a constant aching in his tooth, a sensitivity to hot and cold temperatures, and a chipped tooth. *Id.* The court concluded that "[t]hese symptoms fall short of a condition such as tooth decay or gum infection, which we have recognized as serious because of the substantial risks to health if left untreated." *Id.* The court further observed, "[i]t may have behooved the dentist to inquire further about his pain, but if Greene's

condition has indeed worsened to the point where it interferes with his eating and sleeping, he is free to request another appointment." *Id.* As in *Greene*, here Poff's chipped tooth may have caused some pain, but there is insufficient evidence that it could progress toward a more serious dental condition or that his paid was unbearable. *See Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (breaking off tooth below gumline, rather than extracting it, was objectively serious because it left a risk of infection); *Wynn*, 251 F.3d at 593 (denial of dentures made it hard to eat and caused bleeding, headaches, and disfigurement). As such, the undisputed facts show that Poff did not present an objectively serious medical need.

### 3.2 Defendants Were Not Deliberately Indifferent to Poff's Medical Needs

Even if the Court found that Poff's chipped tooth was a serious medical need, the record does not establish that Defendants were deliberately indifferent to his condition. To prove this, a plaintiff has to come forward with evidence showing more than ordinary or even gross negligence. *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991). Instead, he must prove that the medical professional's treatment decisions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996). It is "obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] the conduct prohibited by the [Eighth Amendment]." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The question is not whether the plaintiff believes some other course of treatment would have been better. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th

Cir. 1996); *Reynolds v. Barnes*, 84 F. App'x 672, 674 (7th Cir. 2003) ("[T]he Constitution does not mandate that a prisoner receive exactly the medical treatment he desires."). If the inmate has received some health care, it then falls to him to show that the treatment he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" his serious medical condition. *Snipes*, 95 F.3d at 592. Mere disagreement with a doctor's medical judgment is insufficient. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Walker v. Zunker*, 30 F. App'x 625, 628 (7th Cir. 2002) ("Mere dissatisfaction with a particular course of treatment, or even malpractice, does not amount to deliberate indifference."). Put differently, the plaintiff must show that his medical providers made treatment decisions "'so dangerous' that the deliberate nature of [their] conduct can be inferred." *Gayton*, 593 F.3d at 623 (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)). Courts generally defer to physicians' treatment decisions, since "there is not one proper way to practice medicine, but rather a range of acceptable courses." *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008). A court must "examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999).

Poff's first claim is that he was not treated quickly enough after the rock-biting incident. Poff first alerted the dental services unit of his chipped tooth on Wednesday, January 22, 2014. Schettle saw him on Monday, January 27, took an x-ray, gave Poff a filling for his chipped tooth, and treated Poff's canker sore. After this appointment, Poff's dental issues related to the rock-biting incident were resolved.

Poff experienced a five-day delay in receiving treatment. Even crediting Poff's representations that he experienced severe pain during this window, the Court can find unconstitutional delay only where the delay was "objectively, sufficiently serious" so as to constitute the "denial of the minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834 (quotation omitted). This can occur when prison medical staff ignore a serious, readily treatable medical condition without good reason. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan*, 612 F.3d at 640. "Delay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* The Seventh Circuit holds that "[i]n cases where prison officials delayed rather than denied medical assistance to an inmate," the plaintiff must "offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015).

Poff has no verifying medical evidence that the five-day delay in receiving dental treatment caused him harm other than his unsworn claims of pain. As explained above, assuming his pain was so severe that it kept him from sleeping, he never said so in any communication to the dental services staff, and they cannot have been deliberately indifferent to conditions they did not know existed. *Gayton*, 593 F.3d at 620 (prison official must actually know of the inmate's condition and then disregard it). Poff gestures at the idea that Schettle's delay in seeing him was a violation of DOC policy, (Docket #66 at 1–2), but he does explain which policy or why. Nor would violation of correctional policy, standing alone, suffice to

establish deliberate indifference. *See Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007); *Martinez v. Hedrick*, 36 F. App'x 209, at *2 (7th Cir. 2002). Without more, the Court cannot say that a five-day delay in scheduling a dental appointment for a chipped tooth—which Poff did not tell Schettle was keeping him up at night—amounts to an unconstitutional level of delay, even it if was painful for Poff. Thus, the delay between Poff's initial injury and treatment is not itself sufficient to establish deliberate indifference.

Nor was Poff's follow-up care constitutionally deficient. First, Poff complains about not receiving a full panorama x-ray at the January 27 appointment. Again, he asserts, without citation or elucidation, that this was required by DOC policy. (Docket #66 at 2). But Schettle took an x-ray of the area where Poff complained of pain from the rock. In Schettle's professional judgment, Poff did not need a more comprehensive examination for his presented symptoms.

This case is like *Brady v. Aldridge*, 493 F. App'x 790, 791–92 (7th Cir. 2012), where the inmate's claim failed because "[h]is allegations about the absence of new xrays or a thorough examination reflect[ed] merely a disagreement with [the dentist's] professional judgment and did not state a claim for deliberate indifference." Here, not only did Schettle use his professional judgment in determining Poff did not need a more comprehensive assessment than what was provided on January 27, but Poff also fails to adequately describe what difference a comprehensive assessment would have made as it related to his chipped tooth from biting the rock. Thus, Schettle's refusal to follow Poff's preferred diagnostic route did not constitute deliberate indifference. *Forbes v. Edgar*, 112 F.3d 262, 267

(7th Cir. 1997) ("Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care."); *Reynolds*, 84 F. App'x at 674.

Further, as explained above, Poff protests that Schettle missed another chipped tooth. Following Poff's continued complaints, Schettle saw him on February 14, 2014 for his "perception" of chipped teeth or missing fillings. Yet examination revealed that Poff had no chipped teeth or failed restorations on the lower jaw. Schettle identified small chips on the grinding surface of some of Poff's teeth #2 and #3, but this is normal, age-related wear and tear. These chips were so minor that Poff did not need fillings, and Schettle simply smoothed them with a dental bur.[2]

Most of the time, Poff attributed the alleged additional chipped tooth or teeth to the rock-biting incident. (Docket #66-1 at 9–10, 12, 15). Yet Poff also said at various points that the chip was caused by Schettle, who, according to Poff, accidentally shaved down Poff's tooth #3 as well as the affected tooth, #2, during the January 27, 2014 appointment. *Id.* at 2, 7–8. Poff makes no effort to resolve this major discrepancy in his narrative, perhaps hoping one or the other might suffice to make out his claim.

In any event, Poff's shifting theory makes no difference to the result here. First, beyond his unsworn, lay opinion, he provides no actual evidence that Schettle made such a mistake or how it caused him additional injury. *See id.* at 15, 18; *McGinn*, 102 F.3d at 298. Second, even if Poff is correct, Schettle's accidental shaving of the wrong tooth during the January 27 operation represents, at worst, medical malpractice, for which the Constitution provides no remedy. *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir.

---

[2]Poff counters with the evidence-free assertion that Schettle's work on this date was "horrible" and "made the problem [worse]." (Docket #67 ¶ 22).

1996) ("*Estelle* requires us to distinguish between 'deliberate indifference to serious medical needs' of prisoners, on the one hand, and 'negligen[ce] in diagnosing or treating a medical condition,' on the other.") (quoting *Estelle*, 429 U.S. at 106); *Snipes*, 95 F.3d at 590 ("[T]he Eighth Amendment is not a vehicle for bringing claims for medical malpractice.").

The remainder of Poff's treatment confirms that prison officials were not deliberately indifferent to his needs. When Poff continued to complain about his dental treatment and pain, Schettle informed him that, in light of the January 27 treatment and February 14 evaluation, there were no additional cracked teeth to treat. Schettle also scheduled him for a cleaning, which Cole performed on April 4. Lee then saw Poff in August and September 2014, and Poff reported that he had mouth pain resulting from biting a rock. Lee found no cracked teeth but noted that tooth #17 was supra-erupted. This condition, coupled with Poff's concededly poor oral hygiene, created a deep pocket food trap which irritated the left upper side of his mouth. Importantly, Lee saw nothing that made him believe Poff's symptoms in August and September of 2014 were related to the rock-biting incident in January or deficient care following that incident. Cole saw Poff again on October 17th for a deep cleaning of teeth #17, #18, and #19 and applied a fluoride varnish to desensitize the area as Lee ordered.

Whether one course of treatment is preferable to another is a classic example of the exercise of medical judgment, and it rests beyond the Eighth Amendment's purview. *Snipes*, 95 F.3d at 590–91. The Constitution is not a medical code that mandates specific medical treatment, *id.* at 592, and Poff is not entitled to demand specific care. *Forbes*, 112 F.3d at 267. His dissatisfaction with Defendants' prescribed course of treatment—in particular, Defendants' alleged failure to see cracked teeth that were not

there—would only raise constitutional concerns if such a decision was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes*, 95 F.3d at 592; *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (plaintiff must show that the doctor knew that his chosen treatment method would be less effective). No such evidence exists in this case. Rather, Defendants took reasonable measures under the circumstances to treat the conditions presented. *Forbes*, 112 F.3d at 267.[3] Poff's claims must, therefore, be dismissed.[4]

**4. CONCLUSION**

Poff did not adequately challenge the facts Defendants proffered. Viewing those undisputed facts even in the light most favorable to him, the Court finds that Poff's claims fail as a matter of law. This action will, therefore, be dismissed.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #59) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

---

[3]It follows from this conclusion that Poff's claim of undue delay (and pain) following the January 27 appointment is without merit, since after that time there was no cracked tooth to treat.

[4]Because the Court finds that no Defendant exhibited deliberate indifference to Poff's medical needs, it need not assess Defendants' contention that some of them, including Cole, Jackson, and Lee, lacked sufficient personal involvement in Poff's claim for deliberate indifference. *See* (Docket #60 at 18–19); *Gentry v. Duckword*, 65 F.3d 555, 561 (7th Cir. 1995).

Dated at Milwaukee, Wisconsin, this 23rd day of June, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Court